UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**DUSTIN LOYD,** }
}
   **Plaintiff,** }
}
v. } Case No.: 4:15-CV-01783-MHH
}
**NANCY A. BERRYHILL,** }
**Commissioner of the** }
**Social Security Administration,** }
}
   **Defendant.** }

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. §§ 405(g), and 1383(c), plaintiff Dustin Loyd seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Mr. Loyd's claim for a period of disability, disability insurance benefits, and supplemental security income. After careful review, the Court affirms the Commissioner's decision.[1]

### I.   PROCEDURAL HISTORY

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. (*See* https://www.ssa.gov/agency/commissioner.html). Therefore, the Court asks the Clerk to please substitute Ms. Berryhill for Carolyn W. Colvin as the defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

Mr. Loyd applied for a period of disability, disability insurance benefits, and supplemental security income on May 8, 2012. (Doc. 8-6, pp. 2, 11). Mr. Loyd alleges that his disability began on August 27, 2011. (Doc. 8-6, pp. 2, 11). The Commissioner denied Mr. Loyd's application for benefits on September 4, 2012. (Doc. 8-5, pp. 1-4). Mr. Loyd requested a hearing before an Administrative Law Judge (ALJ). (Doc. 8-5, pp. 16-17). The ALJ issued an unfavorable decision on March 10, 2014. (Doc. 8-4, p. 36). On August 12, 2015, the Appeals Council declined Mr. Loyd's request for review (Doc. 8-3, pp. 2-7), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c).

## II. STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d

1155, 1158 (11th Cir. 2004). In evaluating the administrative record, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If substantial evidence supports the ALJ's factual findings, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r of Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that he is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past

relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Mr. Loyd has engaged in substantial gainful activity since August 27, 2011, the alleged onset date. (Doc. 8-4, p. 41). Mr. Loyd held at least three jobs between August 27, 2011 and the date of the ALJ's decision. (Doc. 8-4, pp. 41-42). In 2011, Mr. Loyd worked as a van driver transporting chicken catchers for Francisco Poultry. (Doc. 8-4, p. 42; Doc. 8-6, p. 18.). Mr. Loyd worked as a laborer for Quality Custom Marble in 2012. (Doc. 8-3, p. 46; Doc. 8-4, pp. 41; Doc. 8-6, p. 20; Doc. 8-7, p. 17). Mr. Loyd then worked for Ivan Meeks. (Doc. 8-3, p. 46; Doc. 8-4, p. 41; Doc. 8-6, p. 30).[2] Although the ALJ found that Mr. Loyd has engaged in substantial gainful activity since his alleged onset date, the ALJ explained that because "there is a 12-month period where [Mr. Loyd] did not have substantial gainful activity earnings reported or otherwise, the analysis continues due to [Mr. Loyd's claim for supplemental security income] and his date last insured of March of 2015." (Doc. 8-4, p. 42).

The ALJ determined that Mr. Loyd suffers from the following severe impairments: epilepsy, hypertension, right shoulder tendinopathy, enthesopathy of the knee, depression, anxiety, and a learning disability. (Doc. 8-4, p. 42). The ALJ

---

[2] It is unclear from the record what position Mr. Loyd held with Ivan Meeks.

also found that Mr. Loyd has the following non-severe impairments: gastroesophageal reflex disease, back pain, and a history of substance abuse. (Doc. 8-4, p. 42). The ALJ found that Mr. Loyd does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 8-4, pp. 42-46).

Based on Mr. Loyd's impairments, the ALJ examined Mr. Loyd's residual functional capacity. The ALJ determined that Mr. Loyd has the RFC to perform light work. The ALJ explained that Mr. Loyd is:

> precluded from climbing ladders, ropes[,] or scaffolds and from exposure to hazardous moving machinery, commercial driving[,] and unprotected heights. He can frequently climb ramps and stairs, balance, stoop, kneel, crouch[,] and crawl. He needs a temperature controlled environment in which he has no more than occasional exposure to extreme temperatures of cold or heat, wetness[,] or humidity. The claimant is limited to work that requires no more than the understanding, remembering[,] and carrying out of simple instructions. Said activity can be sustained for two hour periods and, with normal mid-morning, lunch, and mid-afternoon breaks, can be sustained over an eight-hour day. The claimant requires work with no more than occasional decision-making, infrequent changes in the work setting, and no more that occasional interaction with the public, coworkers[,] or supervisors.

(Doc. 8-4, p. 46). Based on this RFC, the ALJ concluded that Mr. Loyd is unable to perform his past relevant work as a laborer or van driver. (Doc. 8-4, pp. 52-53). Relying on testimony from a vocational expert, the ALJ found that jobs exist in the

national economy that Mr. Loyd can perform, including inspector/hand packager, garment sorter, and shipping and receiving wares. (Doc. 8-4, p. 53). Accordingly, the ALJ determined that Mr. Loyd has not been under a disability within the meaning of the Social Security Act. (Doc. 8-4, p. 54).

## IV. ANALYSIS

Mr. Loyd argues that he is entitled to relief from the ALJ's decision because the ALJ erred in finding that Mr. Loyd does not meet Listing 11.02 and 11.03 and because the Appeals Council failed to properly consider evidence that Mr. Loyd submitted after the ALJ's decision. Mr. Loyd also asks the Court to remand this action so that the ALJ may reconsider Mr. Loyd's subjective complaints of pain consistent with Social Security Ruling 16-3p. The Court examines each issue in turn.

### A. Substantial Evidence Supports the ALJ's Decision That Mr. Loyd Does Not Meet Listing 11.02 and 11.03.

The ALJ found that Mr. Loyd does not meet Listing 11.02 or 11.03. Both listings concern epilepsy. To satisfy Listing 11.02 for convulsive epilepsy (grand mal or psychomotor), the condition must be:

> documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month, in spite of at least 3 months of prescribed treatment. With:
>
> A. Daytime episodes (loss of consciousness and convulsive seizures),

>    or
>
>    B. Nocturnal episodes manifesting residuals, which interfere significantly with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02.  To meet Listing 11.03 for nonconvulsive epilepsy (petit mal, psychomotor, or focal), the condition must be:

> documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.03.

Mr. Loyd argues that the "lead case in the 11th Circuit on seizures as disability is *Lucas v. Sullivan*, 918 F.2d 1567, 1572-1574 (11th Cir. 1990)." (Doc. 12, p. 25).  In its opinion in that case, the Eleventh Circuit explained that the criteria for 11.02 and 11.03 apply "only if the impairment persists despite the fact that the individual is following prescribed anticonvulsive treatment." *Lucas*, 918 F.2d at 1572 (internal citation omitted).  The ALJ found that the objective medical evidence "shows when [Mr. Loyd] is compliant with taking anti-seizure medication, his seizure disorder does not meet the requirement of Listing 11.02 or 11.03." (Doc. 8-4, p. 43).  Substantial evidence in the record supports this finding.

According to the record, Mr. Loyd first sought medical treatment for a seizure in September 2011.  His treating physician did not prescribe anti-seizure

7

medication because she attributed the seizure the Tramadol, a pain medication that Mr. Loyd was taking when the seizure occurred. (Doc. 8-8, pp. 72-73). Mr. Loyd's medical records demonstrate that emergency room physicians first prescribed an antiepileptic drug – Lamictal – in March 2012. Mr. Loyd took the medicine intermittently until he saw his treating physician, and she increased his dose of Lamictal. (Doc. 8-8, p. 71). Between April 2012 and December 2012, Mr. Loyd reported only one seizure. (Doc. 8-9, p. 50). Mr. Loyd reported one seizure in January 2013, but he acknowledged that he had not taken his Lamictal for two or three weeks. (Doc. 8-9, p. 49). Mr. Loyd did not report another seizure until October 2013, when he reported three seizures within one week. (Doc. 8-9, p. 60). Mr. Loyd's treating physician increased Ms. Loyd's dose of Lamictal. (Doc. 8-9, p. 62). Mr. Loyd next reported two seizures in his sleep in January 2014, but he had missed doses of his antiepileptic drug the two days before the seizures occurred. (Doc. 8-9, p. 85).

Thus, the record does not indicate that Mr. Loyd's seizures persisted when he followed his prescribed seizure treatment. Instead, after Mr. Loyd's physicians prescribed anticonvulsive medication, Mr. Loyd typically reported seizures when he missed doses of Lamictal or when his dosage of Lamictal was inadequate.

(Doc. 8-8, pp. 79; Doc. 8-9, pp. 49-50; 61-62, 85). Therefore, the *Lucas* decision does not provide a basis for relief.[3]

Although its opinion is not binding authority like the *Lucas* decision, a panel of the Eleventh Circuit recently examined seizures as a disability and held that under 11.02 and 11.03, "the degree of impairment is determined by considering the type, frequency, and duration of the claimant's seizures, and both Listings require at least one detailed description of a typical seizure." *Bellew v. Acting Comm'r of Soc. Sec.*, 605 Fed. Appx. 917, 920 (11th Cir. 2015) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00(A)). A detailed description includes "the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00(A). "The reporting physicians should indicate the extent to which [the] description of

---

[3] *See also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00(A) ("Under 11.02 . . . , the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment."). Citing *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988), Mr. Loyd argues that his inability to afford his prescribed treatment excuses his noncompliance. (Doc. 14, pp. 12-14). Mr. Loyd's argument is not persuasive. First, the record does not support Mr. Loyd's contention that he could not afford treatment. Mr. Loyd did not testify at his administrative hearing that he could not afford his medication. (Doc. 8-3, p. 55). When Mr. Loyd reported to doctors that he had not taken his prescribed medication, he did not complain that he could not afford the medication. (Doc. 8-8, p. 71; Doc. 8-9, pp. 49, 85). Instead, he indicated that it was "difficult for him to remember taking his medications." (Doc. 8-9, p. 49). In addition, the ALJ did not rely solely on Mr. Loyd's noncompliance for the denial of benefits. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (finding that the "ALJ's failure to consider [the claimant's] ability to afford his seizure medication does not constitute reversible error" because the "ALJ's determination that the [claimant] was not disabled was not significantly based on a finding of noncompliance."). Therefore, Mr. Loyd's argument regarding his inability to afford his medication does not warrant relief.

seizures reflects his own observations and the source of ancillary information." *Id.* "Testimony of persons other than the claimant is essential for descriptions of type and frequency of seizures if professional observation is not available." *Id.*

The record in this case contains only one description that approximates the *Bellew* standard. According to a September 20, 2011 medical record, when Mr. Loyd visited Dr. Bogdanova following his first seizure – a seizure that occurred while Mr. Loyd was on a break at work, Dr. Bogdanova noted that Mr. Loyd "had some post-ictal confusion for a while and felt very sore." (Doc. 8-8, p. 72). It appears that Dr. Bogdanova's statements are based on Mr. Loyd's reports; there is no indication that Dr. Bogdanvoa observed Mr. Loyd experiencing symptoms of a seizure. The September 2011 medical record states that during the initial seizure, Mr. Loyd "witnessed convulsive movements that were described to him later on." (Doc. 8-8, p. 72).

Assuming that Dr. Bogdanova's description of Mr. Loyd's first seizure is enough to carry Mr. Loyd over the initial *Bellew* threshold, the record lacks evidence that enables Mr. Loyd to proceed further. With respect to Listing 11.02, "there is not sufficient documentation in [Mr. Loyd's] medical records that he has documented a detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month." *Bellew*, 605 Fed. Appx. at 922 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02).

Although Mr. Loyd experienced more than one seizure a month in March 2012, October 2013, and November 2014, the medical records do not contain "a detailed description of a typical seizure pattern," and the records do not reflect "[d]aytime episodes (loss of consciousness and convulsive seizures), or . . . [n]octurnal episodes manifesting residuals, which interfere significantly with activity during the day." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02. (*See* Doc. 8-8, pp. 71; Doc. 8-9, pp. 58-63, 85-87). Therefore, substantial evidence supports the ALJ's decision that Mr. Loyd does not meet Listing 11.02.

With respect to Listing 11.03, Mr. Loyd's medical records contain no detailed documentation "of nonconvulsive seizures occurring more frequently than once a week, in which he experienced transient postictal manifestations of unconventional behavior or significant interference with activity during the day." *Bellew*, 605 Fed. Appx. at 922 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.03). In October 2011, Mr. Loyd experienced migraine-like headache symptoms during an EEG study, but doctors concluded that the headaches were not associated with electrographic evidence of seizure activity. (Doc. 8-8, p. 83). Mr. Loyd reported more than one seizure a week only once after doctors prescribed antiepileptic medication, and there is no evidence that the seizures resulted in unconventional behavior or significant interference with Mr. Loyd's daily activities.

The record does not contain evidence of the required symptoms or a diagnosis of nonconvulsive epilepsy. Because Mr. Loyd does not have nonconvulsive seizures occurring more frequently than once a week and because Mr. Loyd has not experienced the required transient postictal manifestations of unconventional behavior or significant interference with activity during the day, the ALJ properly determined that Mr. Loyd does not meet Listing 11.03. *See Perkins v. Comm'r of Soc. Sec. Admin.*, 533 Fed. Appx. 870, 872 (11th Cir. 2014) (to meet a Listing, "the claimant must meet all of the specified medical criteria, and an impairment that fails to do so does not qualify no matter how severely it meets some of the criteria.") (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

Mr. Loyd contends that that his epilepsy, in combination with his learning disability, depression, back pain, and borderline intellectual functioning, medically equals a listing. (Doc. 12, p. 28; Doc. 14, p. 14). Mr. Loyd does not cite to specific evidence to support this argument. *See Wilbon v. Comm'r of Soc. Sec.*, 181 Fed. Appx. 826, 828 (11th Cir. 2006) ("A claimant who contends that he has an impairment that meets or equals a Listing bears the burden of presenting evidence establishing how his impairment meets or equals that Listing."). Moreover, the ALJ's statement that Mr. Loyd does not have an impairment or combination of impairments that meets or medically equals a listing demonstrates that the ALJ reviewed the cumulative effects of Mr. Loyd's impairments. *Wilson*

*v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (ALJ's statement that the claimant did not have an impairment or combination of impairments that meets or medically equals a listing "constitutes evidence that [the ALJ] considered the combined effects of [the claimant's] impairments").

### B. The Appeals Council Properly Considered Evidence Submitted After the ALJ's Decision.

While petitioning for review, Mr. Loyd provided supplemental evidence to the Appeals Council in support of his claim for disability benefits. The new evidence includes records from Gadsden Regional Medical Center dated April 5, 2005 through December 31, 2012 (Doc. 8-10; Doc. 8-11, pp. 2-41); treatment notes from Dr. Adam Alterman dated April 14, 2014 through April 28, 2014 (Doc. 8-11, pp. 45-61); and a physical capacities form that Dr. Alterman completed on April 28, 2014 (Doc. 8-11, p. 44). Mr. Loyd argues that the Appeals Council failed to adequately review this new evidence because it did not make specific findings about the evidence. (Doc. 12, pp. 34-35).

When an ALJ issues an unfavorable decision and the Appeals Council considers new evidence but denies a claimant's request for review, the Appeals Council is not required "to provide a detailed discussion of a claimant's new evidence when denying a request for review." *Mitchell v. Commissioner*, 771 F.3d 780, 782-83 (11th Cir. 2014). This is true even if the evidence is noncumulative or chronologically relevant. *Parks ex rel D.P. v. Comm'r of Soc. Sec. Admin.*, 783

F.3d 847, 853 (11th Cir. 2015); *see also Atha v. Comm'r of Soc. Sec. Admin.*, 616 Fed. Appx. 931, 935 (11th Cir. 2015) ("[W]e have clarified that Mitchell's holding is not limited 'to situations where the new evidence was cumulative or not chronologically relevant.'") (quoting *Parks*, 783 F.3d at 853).

Citing *Epps v. Harris*, 624 F. 2d 1267 (5th Cir. 1980) and *Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 2007), Mr. Loyd maintains that the Appeals Council's review of the new evidence was conclusory. (Doc. 12, pp. 34-35). The Eleventh Circuit's recent decisions in *Mitchell* and *Parks* foreclose Mr. Loyd's argument. In fact, the Eleventh Circuit rejected the same argument in *Parks*:

> Parks submitted additional evidence to the Appeals Council, and the Appeals Council added the evidence to the record, stated that it considered the evidence, and denied review. As in *Mitchell,* nothing suggests that the Appeals Council failed to consider Parks's new evidence.
>
> Parks's reliance on *Epps v. Harris,* 624 F.2d 1267 (5th Cir.1980), and *Bowen v. Heckler,* 748 F.2d 629 (11th Cir.1984), is misplaced. In *Epps,* our predecessor court found that the Appeals Council had not 'adequately evaluate[d]' new evidence. 624 F.2d at 1273. But as we explained in *Mitchell,* the decision in *Epps* 'arose in a different procedural context,' where the Appeals Council *affirmed* the decision of the administrative law judge. *Mitchell,* 771 F.3d at 783. *Epps* has little bearing on a denial of a request for review. *Bowen* is inapposite too. In *Bowen,* our Court 'concluded the record established that the Appeals Council did not adequately evaluate additional evidence submitted to it because it viewed each of the claimant's impairments in isolation and did not consider their combined effect.' *Mitchell,* 771 F.3d at 784. '*Bowen* requires the Appeals Council to apply the correct legal standards in performing its duties,' but it does not require that the Appeals Council include with every denial of review a 'detailed rationale for why each piece of new evidence submitted to it does not

14

change the [administrative law judge]'s decision.' *Mitchell,* 771 F.3d at 784.

*Parks*, 783 F.3d at 853.

The Appeals Council considered the treatment notes from Gadsden Regional Medical Center dated April 5, 2005 through December 31, 2012; treatment notes from Dr. Adam Alterman dated April 14, 2014 through April 28, 2014; and a physical capacities form that Dr. Alterman completed on April 28, 2014, but the Appeals Council found "that this information does not provide a basis for changing the Administrative Law Judge's decision." (Doc. 8-3, p. 3; *see also* Doc. 8-3, p. 6-7). Therefore, with respect to this supplemental evidence, the Appeals Council satisfied its obligation. *See Parks*, 783 F.3d at 852 ("The Appeals Council stated that it considered the new evidence that Parks submitted, and the Appeals Council added the evidence to the record. The Appeals Council is not required to do more.").

Mr. Loyd also submitted to the Appeals Council records from Gadsden Regional Medical Center dated August 25, 2014. (Doc. 8-3, pp. 9-27). Regarding this evidence, the Appeals Council stated that "[t]he ALJ decided your case through March 10, 2014. This information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before March 10, 2014." (Doc. 8-3, p. 3).

15

"'With a few exceptions, a claimant is allowed to present new evidence at each stage of the administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d, 1253, 1261 (11th Cir. 2007)). The Appeals Council must review evidence that is new, material, and chronologically relevant. *Ingram,* 496 F.3d at 1261. The Court reviews de novo whether supplemental evidence is new, material, and chronologically relevant. *Washington*, 806 F.3d at 1321.

Assuming that the August 25, 2014 treatment notes from Gadsden Regional Medical Center are new and chronologically relevant, they are not material. For supplemental evidence to be material, the evidence must be "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).

Here, there is not a reasonable possibility that the August 25, 2014 treatment notes would change the administrative result. With respect to Mr. Loyd's contention that he meets listings 11.02 and 11.03, Mr. Loyd's medical records do not demonstrate that he experiences convulsive daytime episodes with loss of conscious or nocturnal episodes that interfere with activity during the day sufficient to satisfy Listing 11.02. In addition, Mr. Loyd's medical records do not demonstrate that he experiences nonconvulsive seizures that result in alteration of

16

awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day sufficient to satisfy Listing 11.03. *See supra* pp. 6-13. The August 25, 2014 records from Gadsden Regional Medical Center do not fill this evidentiary gap.

Mr. Loyd reported to the emergency room at Gadsden Regional Medical Center on August 25, 2014. (Doc. 8-3, p. 21). Mr. Loyd's wife told the triage nurse that Mr. Loyd had three seizures on August 13, 2014. (Doc. 8-3, pp. 21, 24). Dr. Albert Sterns examined Mr. Loyd. Dr. Sterns stated that he observed no focal neurological deficit, and Mr. Loyd was oriented to person, place, time, and situation. (Doc. 8-3, p. 19). Dr. Sterns diagnosed a focal seizure but explained that "[t]here are exacerbating factors including emotional stress and missed medication." (Doc. 8-3, p. 21-22). In fact, in conjunction with the focal seizure diagnosis, Dr. Sterns diagnosed drug withdrawal and non-compliance. (Doc. 8-3, p. 22). There is no diagnosis that meets the definition of Listings 11.02 and 11.03 in Dr. Sterns's August 25, 2014 treatment notes.

With respect to Mr. Loyd's anxiety and depression, Dr. Sterns's August 25, 2014 treatment notes indicate that Mr. Loyd battles depression. (Doc. 8-3, p. 22). But, Dr. Sterns explained that Mr. Loyd was "[c]ooperative" and had "appropriate mood [and] affect." (Doc. 8-3, p. 22). Dr. Sterns diagnosed anxiety disorder and prescribed valium to treat Mr. Loyd's agitation and anxiety. (Doc. 8-3, p. 23). Dr.

17

Sterns did not record work-related limitations associated with Mr. Loyd's anxiety diagnosis; therefore, there is no reasonable probability that Dr. Sterns's August 25, 2014 treatment note would change the ALJ's decision with respect to Mr. Loyd's mental impairments. *See Osborn v. Barnhart*, 194 Fed. Appx. 654, 667 (11th Cir. 2006) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality"); *see also* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

Thus, because the August 25, 2014 medical record is not material, the Appeals Council did not err in refusing to consider this evidence.

### C. Social Security Ruling 16-3p Does Not Require Remand

In a motion that Mr. Loyd filed after the parties briefed the issues that Mr. Loyd raised on appeal, Mr. Loyd asks the Court to remand this action so that the ALJ may examine Mr. Loyd's subjective complaints of pain consistent with Social Security Ruling 16-3p. (Doc. 15; Doc. 17). SSR 16-3p became effective on March 28, 2016. The ruling updates the criteria that an ALJ must use to evaluate a claimant's subjective complaints of pain. Mr. Loyd argues that SSR 16-3p should apply retroactively.

Mr. Loyd's argument is not persuasive in light of a recent decision from a panel of the Eleventh Circuit Court of Appeals. *See Green v. Comm'r of Soc. Sec.*, --- Fed. Appx. ----, 2017 WL 3187048 (11th Cir. July 27, 2017). In *Green*, a claimant argued on appeal that the ALJ should reassess her credibility in light of SSR 16-3p. *Green*, 2017 WL 3187048 at *4. The Eleventh Circuit panel explained:

> SSR 16-3p eliminates the term "credibility" from sub-regulatory policy and stresses that when evaluating a claimant's symptoms, the adjudicator will "not assess an individual's overall character or truthfulness" but instead will "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms."

*Green*, 2017 WL 3187048 at *4 (quoting SSR 16-3p, 81 Fed. Reg. 14166, 14171).

The Court continued:

> Administrative rules are not generally applied retroactively. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law . . . administrative rules will not be construed to have retroactive effect unless their language requires this result."). Because SSR 16-3p does not specify that it applies retroactively, and [the claimant] has not provided any authority showing that it applies retroactively, we decline to apply that standard here.

*Green*, 2017 WL 3187048 at *4. Consistent with *Green*, the Court finds that SSR-16-3p does not apply retroactively.

## V. CONCLUSION

For the reasons discussed above, the Court finds that the ALJ's decision is supported by substantial evidence, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Accordingly, the Court affirms the Commissioner. The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 8, 2017.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE